IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

LEWIS OWENS                                                                                    PLAINTIFF

v.                                        5:06CV00273 WRW/JTR

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration[1]                                                              DEFENDANT

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

### INSTRUCTIONS

This recommended disposition has been submitted to United States District Judge William R. Wilson, Jr. The parties may file specific objections to these findings and recommendations and must provide the factual or legal basis for each objection. These objections must be filed with the Clerk no later than eleven (11) days from the date of the findings and recommendations. A copy must be served on the opposing party. The United States District Judge, even in the absence of objections, may reject these proposed findings and recommendations in whole or in part.

### DISPOSITION

Plaintiff, Lewis Owens, has appealed the final decision of the Commissioner of the Social Security Administration denying his claim for Disability Insurance Benefits.[2] Both parties have submitted Appeal Briefs (docket entries #8 and #9), and the issues are now joined and ready for disposition.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g). While "substantial

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Therefore, he has been substituted for Jo Anne B. Barnhart pursuant to Fed.R.Civ.P 25(d)(1).

[2] On November 6, 2006, the Court appointed Mr. Alan Nussbaum to represent Plaintiff. The Court appreciates the time and effort expended by Mr. Nussbaum and his partner, Mr. David M. Hendrix, in representing the Plaintiff in this case.

evidence" is that which a reasonable mind might accept as adequate to support a conclusion,[3] "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).

Plaintiff alleged disability[4] due to diabetes, high blood pressure, a shoulder injury and vision problems. (Tr. 12.) After conducting an administrative hearing, the Administrative Law Judge[5] ("ALJ") concluded that Plaintiff had not been under a disability, within the meaning of the Social Security Act, at any time through July 5, 2006, the date of his decision. (Tr. 17-18.) On August 24, 2006, the Appeals Council received and considered additional evidence and then denied Plaintiff's request for a review of the ALJ's decision; thereby making it the final decision of the Commissioner. (Tr. 4-6.) Plaintiff then filed his Complaint initiating this appeal. (Docket entry #2.)

Plaintiff was 53 years old at the time of the hearing and had completed the eleventh grade in school. (Tr. 179.) He had past relevant work as a truck driver. (Tr. 12, 108, 119.)

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process. Step 1 involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(b)(2003). If the claimant is, benefits are denied, regardless of medical condition, age, education, or work experience. *Id.*

---

[3]*Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

[4]"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

[5]The Hon. Donald R. Rebsamen.

Step 2 involves a determination, based solely on the medical evidence, of whether the claimant has an impairment or combination of impairments which significantly limits claimant's ability to perform basic work activities, a "severe" impairment. *Id.*, § 404.1520(c). If not, benefits are denied. *Id.*

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id.*, §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).[6] If so, and the duration requirement is met, benefits are awarded. *Id.*

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform the physical and mental demands of past relevant work. *Id.*, § 404.1520(f). If so, benefits are denied. *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. *Id.*, § 404.1520(g). If so, benefits are denied; if not, benefits are awarded. *Id.*

The ALJ found that Plaintiff: (1) worked part-time, but had not engaged in substantial gainful activity since his alleged onset date (Tr. 17); (2) had "severe" impairments, including diabetes mellitus, hypertension, and low back pain (Tr. 13); (3) alleged depression and occasional visual problems, which were not "severe" (*id.*); (4) did not have an impairment or combination of impairments that met or equaled a Listing (Tr. 17); (5) was not fully credible in his subjective allegations, which were not borne out by the overall record (*id.*); (6) retained the RFC for a full range of light work (*id.*); (7) was unable to perform his past relevant work as a long-haul truck driver (*id.*); but (8) was able to perform other jobs that existed in significant numbers in the economy, despite

---

[6]If the claimant's impairments do not meet or equal a Listing, then the ALJ must determine the RFC based on all the relevant medical and other evidence. *Id.*, § 404.1520(e). This RFC is then used by the ALJ in his analysis at Steps 4 or 5. *Id.*

his limitations.[7] *Id.*

Finally, in reaching his decision, the ALJ used Rule 202.10, Table No. 2, Appendix 2, Subpart P, Regulations No. 4, to direct a finding that, based on Plaintiff's vocational profile, RFC, and other relevant factors, he was not disabled. (Tr. 17.)

In his Appeal Brief, Plaintiff argues that the ALJ erred: (1) in failing to fully and fairly develop the record; and (2) in not calling a vocational expert ("VE") to address Plaintiff's nonexertional impairments. The Court will address each of these arguments separately.

First, Plaintiff contends that the ALJ failed his duty to fully and fairly develop the record by not updating Plaintiff's medical records and by not ordering a consultative examination by an ophthalmologist. (*Pltf.'s App. Br.* at 6-7.) The ALJ has a duty to fully and fairly develop the record, even in cases where the claimant is represented by counsel. *E.g., Bishop v. Sullivan*, 900 F.2d 1259, 1262 (8th Cir. 1990). This duty is even greater where, as here, the claimant is not represented by counsel at the hearing. *E.g., Salts v. Sullivan*, 958 F.2d 840, 844 (8th Cir. 1992). However, the ALJ is not required to function as claimant's substitute counsel. Rather, he is only obligated to develop a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994).

According to Plaintiff, his medical records should have been updated because there "may" have been other outstanding medical reports between the hearing and the August 30 report.[8] Plaintiff has a greater burden to justify remand than speculation that there "may" have been other medical records in existence. Absent unfairness or prejudice, which Plaintiff has not demonstrated, remand is not appropriate. *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995); *Onstad v. Shalala*, 999 F.2d

---

[7]At step 5, the ALJ correctly noted that, once Plaintiff was determined to be unable to perform his past relevant work, the burden shifted to the Commissioner to show a significant number of jobs within the economy that he could perform, given his RFC, age, education, and past work. (Tr. 16.)

[8]Although the List of Exhibits refers to Medical Records dated 11/19/03 to 8/30/05 from the clinic where Plaintiff received treatment (Tr. 2), there is no August 30 report. There is a report dated August 29, 2005. (Tr. 146.) Plaintiff's complaint at that time was a prostate problem, although there was some discussion of diet and medication. *Id.* Most of Plaintiff's contacts with the clinic had to do with his DOT physical, especially the visual portion, or with refills for his medications . (Tr. 147-48, 152, 154-55.) On February 15, 2005, the clinic note indicated that he was doing well and had no complaints. (Tr. 150.)

1232, 1234 (8th Cir. 1993).

Plaintiff submitted to the Appeals Council other medical records that had been created shortly before the ALJ's decision. (Tr. 3, 7, 172-74.) This creates a strong inference that, if there had been other medical records of importance from that time period, Plaintiff also would have submitted them to the Appeals Council.

Plaintiff also argues that the ALJ should have further developed the record by ordering a consultative examination by an ophthalmologist, "since he had had substantial reduction in his vision since 2004." (*Pltf.'s App. Br.* at 6-7.) However, a review of the record reveals that there is little support for the assertion that Plaintiff had suffered a substantial reduction in his vision. A report from January of 2004 noted that he had passed his eye chart for the DOT physical, with vision of 20/30 and 20/30. (Tr. 152.) He testified that he did not wear glasses. (Tr. 184.) In a normal day, he cared for his disabled mother, sat, walked, exercised and *read*. *Id.* He had a regular driver's license. (Tr. 184-85.) In October of 2005, he completed a report that indicated that he drove (alone) on a daily basis (Tr. 77), watched television "all the time," and went to church three times a week. (Tr. 78.) A report from February of 2005 noted that he played basketball. (Tr. 105.) At the time of the hearing, he was working part-time (three to four hours a night) as a janitor. (Tr. 181.) He also did yard work. (Tr. 180.) His uncorrected visual acuity was measured at 20/70 bilaterally in April of 2005. (Tr. 137.)

In June of 2006, Plaintiff was seen at the the University of Arkansas for Medical Sciences Nephrology Clinic for evaluation of proteinuria.[9] (Tr. 172-74.) There was some discussion of referring him to an ophthalmologist, but it appears that the reason for the potential referral was to rule out retinopathy as the etiology of the proteinuria. (Tr. 174.)

The Court concludes that a fair reading of the record leads to the conclusion that the ALJ had before him a sufficient record upon which to make an informed decision. Thus, there was no need

---

[9]The presence of a significant amount of urinary protein. PDR MEDICAL DICTIONARY 1463 (2d ed. 2000).

to obtain additional evidence. The ALJ is permitted to issue a decision without obtaining additional evidence as long as the record is sufficient to make an informed decision. *E.g., Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995). Absent unfairness or prejudice, which Plaintiff has not demonstrated, remand is not appropriate. *Shannon v. Chater*, 54 F.3d at 488; *Onstad v. Shalala*, 999 F.2d at 1234.

Second, Plaintiff briefly argues that the ALJ failed to properly call a VE to address his nonexertional impairments at Step 5 of the sequential evaluation process. (*Pltf.'s App. Br.* at 7.) Although Plaintiff does not identify the nonexertional impairments which allegedly required the testimony of a VE, the Court assumes that he is referring to visual problems and depression.

In *Reed v. Sullivan*, 988 F.2d 812, 816 (8th Cir. 1993) (emphasis in original), the Court explained the circumstances under which an ALJ must use a VE to address a claimant's nonexertional impairments:

> Generally, if the claimant suffers from nonexertional impairments that limit her ability to perform the full range of work described in one of the specific categories set forth in the guidelines, the ALJ is required to utilize testimony of a vocational expert. *Groeper v. Sullivan*, 932 F.2d 1234, 1235 n. 1 (8th Cir. 1991). In those instances, the ALJ cannot rely exclusively on the guidelines to direct a conclusion of whether claimant is "disabled" or "not disabled." *Thompson v. Bowen*, 850 F.2d 346, 349 (8th Cir. 1988). Instead, testimony of a vocational expert must be taken. *Groeper*, 932 F.2d at 1235. The exception to this general rule is that the ALJ may exclusively rely on the guidelines even though there are nonexertional impairments if the ALJ finds, and the record supports the finding, that the nonexertional impairments do not *significantly* diminish the claimant's RFC to perform the full range of activities listed in the guidelines. *Thompson*, 850 F.2d at 349-350 (emphasis added).

*Accord, McGeorge v. Barnhart*, 321 F.3d 766, 768-69 (8th Cir. 2003); *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001); *Holz v. Apfel*, 191 F.3d 945, 947 (8th Cir. 1999). The ALJ found that Plaintiff had occasional visual problems and depression, but that they were *not* "severe." (Tr. 13.) The Court will not repeat its earlier discussion of why the ALJ discounted the severity of Plaintiff's vision problems.

In his application for DIB, Plaintiff contended that he was limited in his ability to work by diabetes, high blood pressure, and a shoulder injury. There was no mention of mental limitations.

(Tr. 118.)  On several related documents, however, he did make reference to depression (Tr. 73, 79, 85, 89, 93), anxiety (Tr. 53), panic attacks (Tr. 80), mood swings (Tr. 32, 82), stress (Tr. 86, 93), and not wanting to get out of bed (Tr. 32, 82, 93).  Based on these complaints, Plaintiff was evaluated by consulting psychologist Charles M. Spellman, Ph.D., in November of 2005.  (Tr. 163-166.)  His diagnosis was adjustment disorder, with mixed emotional features.  (Tr. 164.)  Dr. Spellman failed to identify two or more areas in which Plaintiff had a significant limitation in adaptive functioning.  (Tr. 165.)  He noted that Plaintiff's mood was mildly depressed.  (Tr. 164.)  In his decision, the ALJ discussed Dr. Spellman's findings and Plaintiff's mental functioning at some length.  (Tr. 14.)  He found that Plaintiff's depression was situational, rather than clinical, and his depression was not a "severe" impairment.  (Tr. 13-14.)

A "severe" impairment is one that significantly limits a claimant's physical or mental ability to do basic work activities.  *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997); *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992); 20 C.F.R. § 404.1520(c)  (2005).  It has "more than a minimal effect on the claimant's ability to work."  *Hudson v. Bowen*, 870 F.2d 1392, 1396 (8th Cir. 1989).  In 20 C.F.R. § 404.1521 (2005), a non-severe impairment is described as follows:

> (a)  *Non-severe impairment(s).*  An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.
> (b)  *Basic work activities.*  When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs.  Examples of these include--
> (1)  Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling;
> (2)  Capacities for seeing, hearing, and speaking;
> (3)  Understanding, carrying out, and remembering simple instructions;
> (4)  Use of judgment;
> (5)  Responding appropriately to supervision, co-workers and usual work situations; and
> (6)  Dealing with changes in a routine work setting.

The record firmly supports the ALJ's finding that Plaintiff had no nonexertional impairment which significantly affected his RFC to perform a full range of light work activities.  Therefore, it was not error to rely on the Medical-Vocational Guidelines in determining that Plaintiff was not disabled.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *E.g., Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996); *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992). The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, the medical and other evidence. The Court concludes that the record as a whole contains ample evidence that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. at 401; *see also, Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). The Court further concludes that the ALJ's decision is not based on legal error.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is hereby affirmed and Plaintiff's Complaint is hereby dismissed, with prejudice.

DATED this 7th day of January, 2008.

_____
UNITED STATES MAGISTRATE JUDGE